IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DUNKIN' DONUTS FRANCHISED
RESTAURANTS LLC, a Delaware
limited liability company, et al.,

    Plaintiffs,

      v.

SANDIP, INC.,
a Georgia corporation, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:08-CV-3815-TWT

ORDER

This is a breach of contract and trademark infringement action.  It is before

the Court on the Plaintiff's Motion for Summary Judgment [Doc. 51], which is

GRANTED.

I.  Background

Defendant Sandip, Inc. was a Dunkin' Donuts  franchisee operating two donut

shops in Norcross, Georgia.  Defendants Bahadurali Lakhani, Hasmukh Patel, and

Sandip Patel are shareholders of Sandip, Inc.  Dunkin' Donuts alleges that the

Defendants breached their franchise agreements by failing to remodel their shops,

participate in mandatory system-wide programs, attend required training, and prepare

T:\ORDERS\08\Dunkin' Donuts\msjtwt.wpd

immigration forms for new employees.  Dunkin' Donuts also alleges that the Defendants transferred a significant portion of the franchise without Dunkin' Donut's knowledge in violation of the franchise agreement.

In 2007, Dunkin' Donuts sued the Defendants to terminate the franchise agreements.  The parties entered a conditional settlement agreement under which the Defendants were allowed to sell their shops if Dunkin' Donuts approved the sale. (See Pl.'s Mot. for Summ. J., Ex. 1.S, § 3(h).)  The agreement provided that the lawsuit would be dismissed without prejudice, allowing Dunkin' Donuts to re-file if the Defendants didn't sell their shops.  (Id. § 6.)  Under the agreement, Dunkin' Donuts was not allowed to "unreasonably" reject a proposed sale agreement.  (Id. § 3(h).)  The Defendants submitted two proposed sale agreements.  Both involved the same buyer.  Dunkin' Donuts rejected both agreements and then filed this lawsuit. The Defendants filed counterclaims alleging that Dunkin' Donuts breached the 2008 settlement agreement and that Dunkin' Donuts discriminated against the Defendants based on their race in violation of 42 U.S.C. §§ 1981 and 1982.  In August 2009, this Court granted Dunkin' Donut's Motion for a Preliminary Injunction and ordered the Defendants to turn over physical possession of their shops to Dunkin' Donuts. Dunkin' Donuts now moves for summary judgment on its claims and the Defendants' counterclaims.

## II.   Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III.   Discussion

### A.   Breach of Contract Counterclaim

The 2008 settlement agreement provides that Dunkin' Donuts may not "unreasonably" reject a proposed sale agreement.  (Pl.'s Mot. for Summ. J., Ex. 1.S, § 3(h).)  The Defendants identify three ways in which they say Dunkin' Donuts acted unreasonably.  First, they say Dunkin' Donuts did not consider the buyer's financial condition before rejecting the proposed sale agreement.  However, Dunkin' Donuts offers a reasonable explanation for its actions.  To determine whether to approve a

sale, Dunkin' Donuts utilizes a two-step analysis.  The first step is to evaluate whether the store is likely to "break even" the following year. (Gabellieri Dep. at 23-30; Aiken Dep. at 33-34.)  During this step, Dunkin' Donuts considers the projected profits and liabilities of the store.  If it appears the store will lose money, Dunkin' Donuts rejects the proposed sale agreement.  If it appears the store will break even, Dunkin' Donuts moves to the second step.  There, Dunkin' Donuts investigates the financial condition of the buyer to determine whether it is financially able to purchase and operate the store.  (Gabellieri Dep. at 31-32; Aiken Dep. at 33-34.)

Here, Dunkin' Donut's analysis showed that the stores at issue would not break even.  Therefore, Dunkin' Donuts did not complete the second step of the analysis. The Defendants may disagree with the sequence of Dunkin' Donut's analysis, but its decisions were made pursuant to a firmly-established policy that is grounded in reasonable business considerations.   Therefore, Dunkin' Donuts did not act unreasonably by failing to investigate the buyer's financial condition. See Black's Law Dictionary 1679 (9th ed. 2009) (defining "unreasonable" as "irrational or capricious" or "not guided by reason").

The Defendants also say Dunkin' Donuts unreasonably applied its policy by using regional data to project the store's future profits and liabilities. The Defendants offer no evidence that Dunkin' Donut's assumptions were inaccurate.  Instead, they

say Dunkin' Donuts should have used store-specific data from the stores at issue. Although store-specific data may have yielded different results, Dunkin' Donut's decision to use regional data is not unreasonable.

Finally, the Defendants say Dunkin' Donuts acted unreasonably by failing to make an exception to its break-even policy. They point to an unsigned 1995 document entitled "Notice of Purchasing a Shop Below Estimated Break-Even Point." (See Def.'s Response to Pl.'s Mot. for Summ. J., Ex. N.) They say the document shows that Dunkin' Donuts has made exceptions to its break-even policy in the past and argue that it is unreasonable not to make an exception here. However, there is no evidence showing the circumstances of the 1995 sale or even that the sale occurred. Therefore, the document alone cannot support the Defendants' position that Dunkin' Donuts acted unreasonably. Accordingly, Dunkin' Donuts is entitled to summary judgment on the Defendants' breach of contract counterclaim.

B.      42 U.S.C. §§ 1981 and 1982 Counterclaim

Chapter 42, Section 1981 of the United States Code prohibits racial discrimination in the making and performance of contracts. Section 1982 prohibits racial discrimination in actions related to real and personal property. The Defendants argue that Dunkin' Donuts violated §§ 1981 and 1982 by rejecting the proposed sale

agreements between the Defendants, who are from India, and the buyer, who is from Haiti.

A racial discrimination claim can be supported by direct or circumstantial evidence. The Defendants say that Sandip Patel's deposition testimony offers direct evidence of Dunkin' Donut's intent to discriminate. Patel testified that David Bulger, a Dunkin' Donuts employee, said, "You cannot win this case from the court because there's no Indian judge." (Patel Dep. at 417.) However, there is no evidence that Bulger was involved in the decision to reject the proposed sale agreement. Moreover, the alleged statement was made significantly after Dunkin' Donuts rejected the proposed agreement. Accordingly, the statement, without more, cannot support a discrimination claim under §§ 1981 or 1982.

Absent direct evidence of discrimination, §§ 1981 and 1982 claims are governed by the burden-shifting framework set forth in McDonell Douglass Corp. v. Green, 411 U.S. 792 (1973). See Kinnon v. Arcoub, Gopman & Assocs., Inc., 490 F.3d 886 (11th Cir. 2007). Under that framework, the Defendants have the initial burden of establishing a prima facie case of discrimination. To establish a prima facie case, they must show the following:

> (1) that [the Defendants are] member[s] of a protected class; (2) that the allegedly discriminatory conduct concerned one or more of the activities enumerated in the statute; i.e., the making, performance, modification, or termination of contracts, or the enjoyment of all benefits, privileges,

terms, and conditions of the contractual relationship; and (3) that the [Dunkin' Donuts] treated the [Defendants] less favorably with regard to the allegedly discriminatory act than [Dunkin' Donuts] treated other similarly situated persons who were outside [the Defendants'] protected class.

Benton v. Cousins Properties, Inc., 230 F. Supp. 2d 1351, 1370 (N.D. Ga. 2002), aff'd 97 Fed. Appx. 904 (11th Cir. 2004). If the Defendants establish a prima facie case, there is a presumption of discrimination and the burden shifts to Dunkin' Donuts to show a legitimate nondiscriminatory reason for rejecting the proposed sale agreements. If Dunkin' Donuts meets that burden, the Defendants must show that the proffered reason was pretextual.

The Defendants have not established a prima facie case. The only circumstantial evidence of discrimination is an unsigned 1995 document entitled "Notice of Purchasing a Shop Below Estimated Break-Even Point." The Defendants say the document shows that Dunkin' Donuts made exceptions to its break- even policy. (See Defs.' Response to Pl.'s Mot. for Summ. J., Ex N.) However, there is no evidence regarding the circumstances of the sale. Therefore, the document alone cannot support a prima facie case of discrimination.

Even if the Defendants could establish a prima facie case, Dunkin' Donuts has shown a legitimate nondiscriminatory reason for rejecting the proposed sale agreements. As discussed in Section III(A), Dunkin' Donut's policy was to reject any

deal that would place the buyer in a position to lose money, and its analysis showed

that the buyer would not break even.  The Defendants say this reason is pretextual but

offer no evidence to support their position.  Therefore, Dunkin' Donuts is entitled to

summary judgment on the Defendants' §§ 1981 and 1982 counterclaims.

C.       Fraudulent Inducement Counterclaim

The Defendants also claim Dunkin' Donuts fraudulently induced them to enter

the 2008 settlement agreement by promising to approve any proposed sale

agreements.  However, the 2008 agreement contains a merger clause which states that

there were no representations made by the parties that did not appear in the agreement.

(See Pl.'s Mot. for Summ. J., Ex. 1.S, § 8(j).)  Moreover, the Defendants offer no

evidence that Dunkin' Donuts made any promises or representations that the deal

would be approved.  Accordingly, Dunkin' Donuts is entitled to summary judgment

on the Defendants' fraudulent inducement counterclaim.

D.       Breach of Franchise Agreement

The franchise agreements provide that the franchisor may terminate the

agreement if the franchisee violates any of its terms.  Under the termination clauses,

the franchisor must give the franchisee thirty days notice and an opportunity to cure

the default before terminating the agreements.  The agreements are governed by

Massachusetts law.  The Massachusetts Supreme Court has upheld similar termination

clauses in franchise agreement disputes.  See Zapatha v. Dairy Mart, 381 Mass. 284,

300 (1980) (upholding franchise agreement termination clause that allowed the

franchisor to terminate the agreement immediately if the franchisee breached any of

its terms).

Dunkin' Donuts says the Defendants violated the franchise agreements by

failing to remodel their shops, participate in mandatory system-wide programs, attend

required training, and prepare immigration forms for new employees as required by

the franchise agreements. Dunkin' Donuts also says the Defendants transferred a

significant portion of their franchises without Dunkin' Donut's knowledge in violation

of the agreements. The Defendants claim they attended all required training and have

completed all necessary immigration forms.  However, they do not dispute Dunkin'

Donuts' remaining allegations.  Dunkin' Donuts has provided copies of notice letters

it sent to the Defendants regarding these allegations.  (See Pl.'s Mot. for Summ. J.,

exs. 1.G, 1.I.)  The letters explain that the Defendants have thirty days to cure the

defaults.  The Defendants do not deny receiving these letters and concede that they did

not fix the problems.  Therefore, Dunkin' Donuts is entitled to terminate the franchise

agreements pursuant to the termination clauses.


E.    Termination of the Leases

The lease agreements provide that Dunkin' Donuts may terminate the lease if the franchise agreement for the corresponding shop is terminated for any reason. For the reasons stated in Section III(D), Dunkin' Donuts is entitled to terminate the franchise agreements. Therefore, Dunkin' Donuts is also entitled to terminate the lease agreements.

F.     Trademark Infringement

The franchise agreements require the Defendants to stop using Dunkin' Donuts' proprietary marks and any methods associated with the Dunkin' Donuts system upon termination. Dunkin' Donuts says the Defendants have not done so and asks the Court for a permanent injunction ordering the Defendants to stop using its marks. Because the Court finds that Dunkin' Donuts is entitled to terminate the franchise agreements, Dunkin' Donuts is also entitled to summary judgment on its trademark claims. See Burger King Corp. v. Mason, 710 F.2d 1480, 1492-93 (11th Cir. 1983) (finding that the continued use of the franchisor's trademarks after termination constituted trademark infringement).

G.     Attorneys' Fees

The Defendants are obligated under the Franchise Agreements to pay Dunkin' Donut's attorneys' fees and costs. Massachusetts courts have enforced contractual attorney's fees provisions in similar contexts. See Lincoln St. Realty Co. v. Green,

374 Mass. 630, 630 (1978) (enforcing attorney's fees provision in lease contract);

Honey Dew Associates, Inc. v. Creighton Muscato Enterprises, Inc., 903 N.E.2d 239,

246 (Mass. App. Ct. 2009) (noting that the plaintiff was entitled to attorney's fees

pursuant to a provision in his franchise agreement if he was successful in the lawsuit);

see also Kucel v. Walter E. Heller Co., 813 F.2d 67, 73 (5th Cir. 1987) (holding that

state law chosen by parties determines award of contractual attorneys' fees).

Accordingly, Dunkin' Donuts is entitled to summary judgment on its request for

attorneys' fees.

## IV.  Conclusion

For the reasons stated above, the Plaintiff's Motion for Summary Judgment

[Doc. 51] is GRANTED.

SO ORDERED, this 3 day of May, 2010.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge